PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| AMERICOLD LOGISTICS, LLC, | ) | |
| | ) | CASE NO. 5:12cv749 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| LOCAL 17A UNITED FOOD AND | ) | |
| COMMERCIAL WORKERS, AFL-CIO, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Regarding ECF Nos. 22; 23] |

Before the Court are counter motions for summary judgment filed by Plaintiff Americold Logistics, LLC ("Americold") (ECF No. 22) and Defendant and Counter-Claimant Local 17A United Food and Commercial Workers, AFL-CIO ("Local 17A")(ECF No. 23) regarding the enforceability of an arbitration award. The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons that follow, the Court denies Americold's motion for summary judgment to vacate the arbitrator's award and grants Local 17A's motion for summary judgment to enforce the award.

**I. Background**

Americold is a cold storage warehouse and distribution facility responsible for shipping and receiving frozen products for Heinz foods. ECF No. 1 at 3. It operates two facilities in Massillon, the 17th Street Department and the Erie Street Department. ECF No. 9-1 at 2. Americold's warehouse employees at both locations are members of Local 17A and subject to the same Collective Bargaining Agreement ("CBA"). ECF No. 23-1 at 3. The first CBA was executed February 7, 2000, and was in effect until February 5, 2005, and thereafter subsequently

(5:12cv749)

renewed.  ECF No. 1 at 3-4.  The current CBA has been in effect since February 6, 2010, and is due to expire December 13, 2013.  ECF No. 1 at 3-4.

There are two job classifications for warehouse employees– Lift Truck Operator ("LTO") and sanitation associate.  ECF No. 1 at 4.  Both jobs require workers to use a forklift for some tasks.  ECF No. 1 at 4.  Among the jobs performed by the LTOs is a task identified as "Canadian export stamping," which involves performing certain functions to prepare products for shipping to Canada.  ECF No. 1 at 5; 23-1 at 3.  Canadian stamping was defined during arbitration by undisputed testimony as:

> The Canadians, they're 24 to 30 pallets of either Babybel Bites or specifically designed Heinz food that is specifically made to go to Canada.  The writing's in French.  Their boxes are specifically designed to go.  We have to bring them out of our freezer, put them on our dock, and it takes usually three to four guys; One person on a clamper to break the pallets in half so that the other two, stackers, they have to physically stack each individual box, while the fourth stamps each box with a USDA stamp so that they're cleared to cross the border.

ECF No. 9-1 at 3-4.

Due to an issue with errors associated with the actual stamping of the boxes, Local 17A agreed in 2002 to allow non-union Americold office employees to do the actual stamping of the product boxes.  ECF No. 9-1 at 4.  The office employee was usually a receptionist and her responsibilities were limited to stamping the boxes, not physically handling the product.  ECF No. 9-1 at 4.  The product was physically handled by Local 17A workers.  ECF No. 9-1 at 4.  After a reduction in office staff in 2007, Americold resumed using Local 17A workers to do the actual stamping in 2007.  ECF No. 1 at 5.  The work was not, prior to 2011, performed by contract labor.  ECF No. 9-1 at 4.

2

(5:12cv749)

In 2006, Americold opened the Erie Street facility, and the parties accordingly agreed to a contract addendum ("addendum") to the CBA. ECF No. 9-1 at 5. The addendum read, "[t]he Company retains, in regards to both departments, its right to utilize contract labor for non fork lift positions," and was later inserted into Article 5, Section 1 of the CBA. ECF No. 9-1 at 5.

In March 2011, Americold began to use contract labor for Canadian export stamping. ECF No. 9-1 at 4. Local 17A filed a grievance regarding the use of contract labor to perform work traditionally performed by union workers and arguably subsumed within the job description created by Americold for the forklift operator position. ECF No. 23-1 at 5. Americold denied the grievance and the matter proceeded to arbitration through the American Arbitration Association as provided for in the CBA. ECF No. 23-1 at 5. The parties selected Arbitrator Kimmins to hear the matter and on October 20, 2011, he conducted a full day hearing. ECF No. 23-1 at 5. The issue presented to the arbitrator was, "(1) Did the employer violate the [CBA] when it used contract labor that was not members of Local 17A to perform the work known as Canadian Export Stamping [] and (2) if so, what is the remedy." ECF No. 9-1 at 3.

The arbitrator found in favor of Local 17A. ECF No. 9-1 at 11. Americold filed a motion for reconsideration, which the arbitrator denied. ECF No. 1 at 8. On March 27, 2012, Americold initiated the instant lawsuit by filing a Complaint for Declaratory Relief and Petition to Vacate Arbitration Award pursuant to Federal and State law. ECF No. 1. Local 17A filed an Answer and Counterclaim seeking to confirm the arbitration award. ECF No. 9. Subsequently, both parties filed competing motions for summary judgment as to the Complaint and Counterclaim. ECF Nos. 22; 23. The Court addresses these motions below.

3

(5:12cv749)

## II. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322-23.

A court's review of an arbitration award is "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers of America*, 913 F.2d 1166, 1169 (6th Cir. 1990). The court considers "only the questions of 'procedural aberration' outlined by the Supreme Court in *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987), and *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001)." *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 216 (6th Cir. 2008). Barring the rare exception, the Court does not consider whether the arbitrator made errors in his or her award based upon the merits of the case. *Michigan Family Resources, Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc). Because the parties submitted to arbitration, "it is the arbitrator's view of the facts and the meaning of the contract that they have

4

(5:12cv749)

agreed to accept." *Id.* at 752 (quoting *Misco*, 484 U.S. at 37-38).

The purview of the court is limited to reviewing three issues: whether the arbitrator acted "outside his authority" by settling a dispute not being put forth for arbitration; whether he committed fraud in rendering a decision, or otherwise had a conflict of interest; and whether he interpreted and applied the actual contract in order to settle the dispute. *Mich. Family Res.*, 475 F.3d at 753.

A court cannot make findings of fact independent of the arbitrator; rather, the arbitrator must make the factual findings "and a court may not reject those findings simply because it disagrees with them." *Misco*, 484 U.S. at 38. However, an arbitrator cannot simply dispense his own brand of industrial justice. *Id*. The Supreme Court has declared that if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court may not overturn his decision even if it is "convinced he committed serious error[.]" *Garvey*, 532 U.S. at 509 (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)) (further citations omitted). The court must decide whether the arbitrator arrived at his or her decision using the collective bargaining agreement, rather than relying upon his or her own judgment.

### III. Discussion

Americold does not assert the arbitrator committed fraud or otherwise had a conflict of interest. Instead, Americold argues the first and third prong of the *Michigan Family Resources*

(5:12cv749)

test.[1]

### A. The Arbitrator Did Not Act Outside His Authority in Settling the Dispute

"An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." Mich. Family Res., 475 F.3d at 756.  The CBA recites that "[t]he arbitrator's decision shall be limited to a determination of the issue submitted by the parties and limited to a determination of whether this Agreement has been violated and cannot add to or deduct from its terms." ECF No. 22-4 at 24.

The issue presented to the arbitrator was "Did the employer violate the [CBA] when it used contract labor that was not members of Local 17A to perform the work known as Canadian Export Stamping." ECF No. 9-1 at 3.  The issue was submitted by both parties and by the CBA's own language is limited to a determination of whether the CBA was violated.  Americold does not argue that the dispute was not properly before the arbitrator, but that the arbitrator exceeded the scope of his jurisdiction by "deducting" or "deleting" terms of the CBA. ECF Nos. 25 at 10; 22-1 at 5.  This argument is better characterized as a challenge to the arbitrator's interpretation, which is not a determining factor as to the question of whether the arbitrator exceeded his authority.  *See e.g.* Mich. Family Res., 475 F.3d at 756 ; Allied Waste Systems, 512 F.3d at 217 (scope of authority challenges limited to whether a grievance was not properly before the

---

[1] Though Americold mostly appears to argue that the arbitrator did not interpret and apply the actual contract, some of Americold's arguments speak toward whether the arbitrator exceeded his authority granted by Article XX of the CBA. *E.g.*, ECF Nos. 25 at 10; 22-1 at 5. The Court therefore will consider whether the arbitrator exceeded his authority by settling a dispute not put forth for arbitration.

6

(5:12cv749)

arbitrator). Therefore, the Court finds the arbitrator did not exceed his authority, and the decision cannot be overturned upon that basis.

### B. The Arbitrator Arguably Construed and Applied the CBA

The third prong of *Michigan Family Resources* is whether the arbitrator interpreted and applied the actual contract in order to settle the dispute. 475 F.3d at 753. If an interpretation of a contract is "so untethered to" the terms of the agreement, it would cast doubt upon whether the arbitrator was engaged in interpretation. *Id*. "Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that." *Id*.

Americold asserts that the arbitrator's award is so untethered to the terms of the agreement that it contradicts the plain meaning and express language in the CBA. ECF No. 25 at 2. Americold advances two ways in which the award is untethered to the terms of the agreement: the award violates the express terms of the CBA, and the award improperly relied upon the definition of LTOs to interpret the CBA. ECF Nos. 22-1 at 6; 25 at 5, 8.

#### 1. Express Terms

Americold argues the award contradicts the express terms of the CBA because Article 5, Section 1 gave it the right to use contract labor for any non-forklift positions. ECF No. 25 at 8. Therefore, Americold argues, its hiring of contract labor to perform Canadian export stamping was consistent with the terms of the CBA. ECF No. 25 at 8. Local 17A asserts that the arbitrator had to determine whether the Canadian export stamping job was a non-forklift position, and to

(5:12cv749)

do so he arguably construed, applied and interpreted the CBA.  ECF No. 26 at 10-11.

Article 5, Section 1 of the CBA reads, "[t]he Company retains, in regards to both departments, its right to utilize contract labor for non forklift positions."  ECF No. 1-4 at 4.  The issue presented to the arbitrator was whether Americold violated the CBA when it used contract labor to perform the work known as Canadian export stamping.  ECF No. 9-1 at 3.  In order to consider whether Americold violated Article 5, Section 1 of the CBA, the arbitrator had to determine what a "non-forklift position" is.  "Non-forklift position" is not defined in the CBA.  Therefore, the arbitrator had to consider matters outside the express terms of the CBA to establish the definition of "non-forklift position."  See *Mich. Fam. Res.*, 475 F.3d at 754-55 (agreement silent and ambiguous on the issue of wage increases; arbitrator properly looked for other indicators of meaning).  Doing so did not violate the express terms of the CBA because, as noted, the CBA did not define "non-forklift position."  Therefore, it cannot be said that the award directly contradicts the express terms of Article 5, Section 1.

In support of its argument that the award conflicts with the express terms of the CBA, Americold cites *Cargill, Inc. v. General Truck Drivers, Chauffeurs, Warehousemen and Helpers*, 2011 WL 11459 (N.D.Ohio, Jan. 04, 2011).  ECF No. 25 at 5-6.  The *Cargill* court vacated an arbitrator's award because it was contrary to the terms of the CBA.  *Id*. at *3.  The employee in *Cargill* was terminated after cutting a lock from a co-worker's locker and throwing away the contents, which included company property, and the union filed a grievance alleging the employee was improperly terminated.  *Id*. at *1.  The arbitrator found in favor of the union.  In vacating the award, the court first faulted the arbitrator for improperly finding on his own terms

8

(5:12cv749)

that, in order for a prohibition against lock-cutting to be recognized, any such policy "must be written, clear, and regularly enforced." *Id*. at *3. The court noted that the CBA contained no such language. *Id*. The court further faulted the arbitrator for "invent[ing] his own system of 'progressive discipline,' . . . arbitrarily imposing a 'short suspension of five days' . . . [and] add[ing] a random condition that the suspension should be imposed 'with the understanding that this is not the penultimate step in progressive discipline prior to discharge.'" *Id*. at *5. None of the progressive discipline steps were "drawn in any way from the language of the collective bargaining agreement, or any other policies articulated or practiced by management." *Id*.

In contrast, the instant case does not involve an arbitrator that made up terms or imposed his own notions of fairness or industrial justice. The arbitrator did not make up the term "non-forklift position" or decide unreasonably that the term "non-forklift position" needed to be defined. *Cf. Liberty Nursing Center of Willard, Inc. v. United Food and Commercial Workers Union Local 911*, 525 F.Supp.2d 933, 937 (N.D.Ohio Dec. 5, 2007) (vacating arbitrator's award because the CBA said "$14.00," yet "the arbitrator determined that '$14.00' could mean something other than fourteen single primary units of United States currency," a result "that is so ignorant of the contract's plain language."). Instead, the arbitrator in the instant case construed and applied the CBA and necessarily interpreted the meaning of "non-forklift position."[2] Thus,

---

[2] Americold also states "that the express language in the CBA giv[es] the Company the right to use contract labor for work that does not involve the use of a forklift." ECF Nos. 25 at 9; 1 at 6. The Court, however, notes that the CBA does not say "non-forklift work," which may naturally be understood to mean, as Americold suggests, work that does not involve use of a forklift. Rather, as noted, the CBA refers to "non-forklift positions," which may naturally be understood to mean a certain kind of employment position. While determining whether certain work requires a forklift may be straightforward, it is less straightforward to determine whether

(5:12cv749)

as noted, the award does not conflict with the express terms of the CBA, and it may not be vacated upon that basis.

### 2. Interpretation

Americold argues that, in interpreting the term "non-forklift position," the arbitrator erroneously relied upon the LTO job description[3] and ignored past practice and the "intent of the parties in negotiating the term 'non-forklift positions.'" ECF No. 25 at 8; 22-1 at 6. Local 17A asserts that Americold does not disagree that the arbitrator interpreted the undefined CBA language, but rather it disagrees with his interpretation and, as such, the argument amounts to nothing more than a dissatisfaction with the arbitrator's interpretation of the CBA and is thus an insufficient reason to warrant vacating an award. ECF No. 28 at 7.

Obviously, the arbitrator engaged in interpretation of the CBA. As indicated, Americold itself recognizes the arbitrator was interpreting the term "non-forklift position." ECF No. 25 at 8-10. To interpret the term, the arbitrator considered past practices (ECF No. 9-1 at 4, 9); an

---

certain duties are encompassed within a designated employment "position."

[3] The LTO job description was written by Americold and lists primary responsibilities as "[u]nloads and loads customer product, scans product, and places it correctly in warehouse. Maintains a clean and safe work area." ECF No. 22-8 at 1. "Essential Functions" include, in part, "[p]ack product using shrink wrap. Attach correct labels to product." ECF No. 22-8 at 1.
Americold also objects to the arbitrator's reliance upon the LTO description because it asserts that the "Company-promulgated job description was not created until September 2010–four years after the contract labor clause was negotiated by the parties." ECF No. 25 at 8. Local 17A points out that Americold never objected to the use of the job description during arbitration; that it was a joint exhibit; and that two of Americold's testifying witnesses answered questions about the job description and did not indicate the descriptions were incorrect or inapplicable to the 2006 negotiations. ECF No. 28 at 3-5. The Court does not find the arguments surrounding the date of the official creation of the LTO job description to be a determining factor as to whether the arbitrator arguably construed and applied the CBA.

10

(5:12cv749)

unrebutted description of Canadian export stamping provided by an eleven-year Americold employee (ECF No. 9-1 at 3); the facts leading up to the need for the addendum (ECF No. 9-1 at 5-6); the testimony of the bargaining agents (ECF No. 9-1 at 10); the CBA itself (ECF No. 9-1 at 10); and the "joint exhibit of fork lift description" (ECF No. 9-1 at 10).  In light of all the above, the arbitrator found that,

> based on the unrebuttable description of what work takes place during the Canadian Export Stamping operation, Article 5 of the CBA, the job description for fork lift operator and the insignificant past practice, that the Company relies on, that all work related to the Canadian Export Stamping job belongs to the Fork Lift position - operators and may not be subcontracted.

ECF No. 9-1 at 10-11.

The Court need not decide whether the arbitrator correctly analyzed and interpreted the CBA.  *Mich. Fam. Res.*, 475 F.3d at 754.  The Court does conclude, however, that because the arbitrator was construing or applying the CBA, the award must be enforced.

**C.  Americold's Ohio Law Claims are preempted by § 301**

Americold also seeks to vacate the award pursuant to Ohio Rev. Code § 2711.10.  ECF No. 22-1 at 16.  Local 17A asserts that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts the field of disputes involving the interpretation or enforcement of CBAs.  ECF No. 26 at 6.

Section 301 governs all claims which are "founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'"  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *International Bhd. Of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987)).  The

11

(5:12cv749)

Sixth Circuit has recognized the Supreme Court's declaration of the preempteive effect of § 301. *See DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994) ("[s]ince 1962, the Supreme Court has held that section 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms."); *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc); *Gilreath v. Clemens & Co.*, 212 Fed. App'x. 451, 462 (6th Cir. 2007) (requiring Federal preemption of any State law claim that is inextricably bound up in an interpretation of a collective bargaining agreement, or brought to vindicate a party's rights under such an agreement). "The purpose of this rule is to require that all claims raising issues of labor contract interpretation be decided according to the precepts of federal labor law in order to prevent inconsistent interpretations of the substantive provisions of collective bargaining agreements." *Smolarek*, 879 F.2d at 1329 (citing *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-104 (1962)); *see also Watts v. United Parcel Service*, 701 F.3d 188, 191 (6th Cir. 2012).

To determine whether a State claim is completely preempted by § 301, courts apply a two-step analysis: 1) whether proof of the State law claim requires interpretation of collective bargaining terms; and 2) whether State law or the CBA created the plaintiff's right to bring suit. *DeCoe*, 32 F.3d at 216. "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id*. (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1988)). A court "looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *DeCoe*, 32 F.3d at 216.

12

(5:12cv749)

Americold's assertion that the essence of its claim is unrelated to the CBA defies logic. Americold appears to argue that because the Court may not conduct a *de novo* review of the facts that were before the arbitrator, and may not itself interpret the CBA, it then follows that contract interpretation is not required and preemption applies. ECF No. 27 at 4. To adopt this posture, would render § 301 preemption law superfluous. Americold, like the plaintiff in *DeCoe*, "either invokes rights created by the collective bargaining agreement, or must make substantial reference to the CBA in order to establish an essential element of [its] claim." *Id*. Cf. *Caterpllar*, 482 U.S. at 394-95 (§ 301 does not preempt claims arising out of individual employment contracts that do not invoke rights pursuant to the CBA); *Smolarek*, 879 F.2d at 1331 (no preemption when employee's claim was one for retaliation and "sufficiently set out as separate and apart from a collective bargaining contract claim."). Americold asserts that it has rights under the CBA to hire contract workers to perform non-forklift positions. Its State law claim draws exclusively upon this assertion. ECF No. 1 at 9. Therefore, Americold cannot meet the first requirement for § 301 preemption.

Furthermore, as already stated, the arbitrator did not exceed his powers, or so imperfectly execute them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* O.R.C. 2711.10(D). Therefore, the second requirement for § 301 preemption is not met. Accordingly, Federal law preempts Americold's State law claim.

### IV. Conclusion

For the reasons stated above, the Court denies Americold's Motion for Summary Judgment (ECF No. 22) and grants Local 17A's Motion for Summary Judgment on its

(5:12cv749)

Counterclaim (ECF No. 23). The arbitrator's award is confirmed in its entirety and shall be enforced.

    IT IS SO ORDERED.

| | |
|---|---|
|  January 29, 2013  <br> Date |  */s/ Benita Y. Pearson*  <br> Benita Y. Pearson <br> United States District Judge |